## In re FINANCIAL PARTNERS CLASS ACTION LITIGATION.

### No. 82 C 5910.

United States District Court,
N.D. Illinois, E.D.

March 31, 1987.

## MEMORANDUM DECISION

JOAN HUMPHREY LEFKOW, United States Magistrate.

This decision concerns two issues: (1) whether payments made to the bankruptcy trustee should be included as part of certain claimants' losses in this action and (2) whether payments received as "interest" from the class action defendants should be deducted from losses incurred.

## I. PAYMENTS TO TRUSTEE

The defendants, known in this securities fraud litigation as "Financial Partners," were participants in an investment scheme which caused a loss to the plaintiff class of more than $25 million. Each class member invested money with the defendants and their investments were partially or totally lost as a result of the defendants' conduct. Prior to the filing of this law suit, in the fall of 1982 certain Financial Partners defendants filed for bankruptcy. In the 90 days preceding the initiation of the bankruptcy proceeding, Financial Partners made payments to class members which were characterized either as a return of the investor's principal or as interest payments. On October 29, 1984, the bankruptcy trustee filed a number of bankruptcy preference actions against certain of the class members in order to recover for the bankrupt estates money that had been paid to them within 90 days of filing bankruptcy. Class counsel moved in this action to stay the prosecution of the preference ac-

tions on the basis that they involved the same parties and at least one of the same issues, i.e., the fraudulent conversion of the class members' monies. Class counsel asserted that it would be duplicative, expensive and would cause inordinate delay. Class counsel also argued that the money was not as a matter of law a preference and stated,

> If this Court were to resolve the preference issue against the Class Members named as defendants in the bankruptcy preference action, then any money received by these Class Members as a preference could simply be deducted from any ultimate recovery of the Class Members in the class action proceeding. To pursue these preference actions in Bankruptcy Court would serve no purpose.

Emergency Motion for Order Regulating Conduct of Class Action. Docket entry no. 425, paragraph 13. The matter was resolved by agreement, however, and the bankruptcy preference actions proceeded. Order of November 20, 1984; docket entry no. 426. The outcome was that some of the defendants in the preference actions who are claimants in this action settled with the trustee and returned funds to the bankrupt estates. In some instances, the amount was as little as $500, but in others it was as much as $100,000 or more. These voidable preference actions increased the bankruptcy estates by approximately $500,000.

The claimants state that they settled based on the principle of *Cunningham v. Brown*, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924) and *Teletronics, Ltd. v. Kemp*, 649 F.2d 1236 (7th Cir.1981), that where certain investors in a fraudulent scheme have managed to recoup their investments while other investors have lost, the investors who have benefitted at the expense of others must redeposit their funds so that all investors are ultimately treated in the same manner. The bankruptcy preference defendants maintain that they settled the preference actions in face of certain loss rather than litigate and incur a greater loss.

Through the prosecution of the pending litigation, plaintiffs' counsel have established a settlement fund of approximately seven million dollars to be divided among all the investors who lost approximately $25 million. The principle governing distribution of the fund is that each investor should be paid a pro rata share of the principal amounts invested by each investor, which comes out to about 20–25 percent. In calculating a claimant's loss, class counsel included all the payments the investor made to Financial Partners reduced by all payments the claimant received back from Financial Partners, whether designated as interest, principal or otherwise. Thus any payment a class member received in the 90 days prior to Financial Partners' bankruptcy were subtracted from the total amount the class member paid to Financial Partners in calculating the loss. But if the claimant returned some of the money received from Financial Partners based on the preference action in the bankruptcy court, class counsel takes the position that that amount should not be added to the total principal lost by that claimant. As an example, if a claimant invested $10,000 and received an interest payment of $1,000 in August, 1982, class counsel would calculate that claimant's loss as $9,000. If the investor paid $750 to settle the voidable preference action against him, the claimant would calculate the loss as $9,750. Class counsel, however, would not include this payment to the bankruptcy trustee in the loss calculations but would maintain the loss as $9,000.

Class counsel's justification for this position is that these bankruptcy defendants chose to settle than to incur the expense of defending and perhaps defeating the trustee's claim. Thus, other class members should not absorb the risk of their decision. Furthermore, class counsel argue, if these payments to the trustee are included in calculating the class losses, the distribution of the class fund will be delayed until the bankruptcy estates are closed. This is so because these claimants may receive a portion of the bankrupt estates and, if so, that amount should be subtracted from their loss calculation. Thus, the class fund could not be distributed until the trustee resolved all such voidable preference actions, paid all dividends to class members and was

ready to close the estate. They argue that the amount in question is not substantial enough to justify the delay and further complication that would result from including the voidable preference amounts. The $500,000 increase in the bankruptcy estates is only about 2 percent of the $25 million total losses for all class members. Thus, they argue, the additional expense incurred does not on the whole warrant delaying distribution from the class fund in order to finally ascertain the amounts due to these claimants. Finally, class counsel argue that their vigorous prosecution of this litigation created the settlement fund. The bankruptcy action is not related to the claims made in this litigation and the settlement fund in this litigation should not be used to compensate for every wrong that Financial Partners might have committed.

A number of claimants who made payments to the bankruptcy trustee vigorously oppose class counsel's method of calculation. Certain of them point out that class counsel earlier took the position that the voidable preference actions were related to this action and should be stayed. They further argue that they had no viable chance of winning the voidable preference actions and therefore were compelled to settle in order to conserve their clients' funds. Furthermore, they were under pressure to settle because they feared that this class litigation might be settled or tried before a decision against them in the voidable preference action and they might be in jeopardy of having no claim in either forum. Other claimants focus on the issue whether the distribution would truly have to be delayed until the bankruptcy estates are closed and whether any dividend from the bankruptcy estate should be deducted from the loss calculations. These claimants argue that they should not be treated less favorably because they asserted their rights in the bankruptcy court. At best, they argue, the potential distribution from the bankrupt estate may cause delay, but that delay does not justify lopping off a substantial portion of the claimant's rightful claim. Further, they argue that the likelihood of any distribution from the bankruptcy estates is virtually non-exis-

tent. They say that the bankruptcy estate now contains no more than $500,000 in assets and potentially no more than $1,000,000. There are currently at least $20,000,000 in claims against the estate and a possibility of an Internal Revenue Service claim in excess of $25,000,000. As a practical matter, then, these claimants' hopes of recovery from the bankruptcy estate are dim.

■ Based on a review of all of the materials submitted on this issue, the court concludes that class counsel's position is not persuasive. Inasmuch as the subject matter of the voidable preference actions was the same subject matter at issue in this litigation, that is, the principal, interest or dividends on investments made with Financial Partners, the two actions are very much related. This is certainly bolstered by class counsel's position in its emergency motion to stay the voidable preference actions. Second, class counsel have not supported their assertion that the claimants were likely to prevail against the bankruptcy trustee. Third, it seems inconsistent for class counsel to take the position that the monies returned by Financial Partners within 90 days of the bankruptcy should be deducted from losses but when those same claimants were forced to disgorge those funds, it should not be added to losses. Fourth, class counsel have not disputed the assertion that there is little likelihood of distribution from the bankruptcy estate. Although this is not a decisive factor, it may enter into a decision whether it is worthwhile to delay the distribution of the settlement fund until the estates are closed. In any event, the court wonders whether delay would be necessary with respect to all claimants rather than just those who have claims in the bankruptcy court, or whether another partial distribution might be a better solution. Finally, the argument that the amounts involved are only 2 percent of the total losses and therefore not significant enough to include may be persuasive from a global viewpoint but are certainly unpersuasive to the individuals who stand to lose as much as $25,000 if class counsel's position were adopted.

**52**

For these reasons, the position of class counsel is rejected and they are directed to add the amounts paid to the bankruptcy trustee in settlement of voidable preference actions to the losses incurred by the affected claimants.

## II. INTEREST PAYMENTS

 In calculating the class members' losses, class counsel subtracted from the class members' investment any payments the class members received from Financial Partners. Thus, in calculating the loss the class members' principal investment was reduced by any "interest" payments they received. Several class members contend that their losses should not be reduced by such "interest" payments. They argue that this favors persons who invested later in the scheme over those who invested earlier. The argument is that while their money was invested in Financial Partners, they forewent the opportunity to invest the money elsewhere, whereas those who invested later in the scheme did not suffer this loss. Therefore they should be allowed to keep the so-called interest payments they received.

Class counsel point out that the evidence showed that Financial Partners never conducted a profitable trading program. Rather, investors were told they were earning interest but those payments were paid to some investors with funds that had been deposited by other investors in what is called a classic "Ponzi" scheme. Class counsel believe it would be more fair, then, to treat all so-called interest payments as a return of principal in the calculation of the award. Class counsel refer to *Commodity Futures Trading Commission v. Franklin*, 622 F.Supp. 163, Comm.Fut.L.Rep. (CCH) ¶ 23,363 (W.D.Va.1986), where the court in a similar situation instructed the receiver to subtract any "profits" from the initial investment before determining the investors' pro rata share.

The argument that early investors are being treated less favorably and should be entitled to retain their "interest" is weakened by the fact that it was not really interest, for there were no earnings on their investment, and also by comparison with persons who did not collect interest but rather "rolled over" such returns for further investment. Two comparable investors who invested at the same time would, under the objectors' proposal, receive unequal awards. The court is persuaded that class counsel's proposal is the most equitable means of distributing the limited settlement funds and it is hereby approved.

Under Rule 72(a), Fed.R.Civ.P., objections to this order must be filed with the district judge within ten days after its entry. Failure to object will constitute a waiver of objections on appeal.